HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
REED GRANTHAM, CA Bar #294171
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA  93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Attorneys for Defendant
BRYAN BARTUCCI

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRYAN BARTUCCI,<br><br>Defendant. | Case No. 1:19-cr-00244-ADA-BAM<br><br>NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Judge: Ana de Alba<br>Date: January 17, 2023<br>Time: 10:00 a.m. |
|---|---|

PLEASE TAKE NOTICE that on January 17, 2023, at 10:00 a.m. in the Courtroom of the Honorable Ana de Alba, United States District Judge for the Eastern District of California, defendant Bryan Bartucci, through counsel, Assistant Federal Defender Reed Grantham, will bring on for a hearing the following motion to dismiss the Indictment.

**MOTION**

Mr. Bartucci, by and through his counsel of record, Assistant Federal Defender Reed Grantham, hereby moves this Court for an order dismissing Count 1 of the Indictment on the grounds that 18 U.S.C. § 922(n), which prohibits any person under felony indictment or information from receiving a firearm, violates the Second Amendment to the United States Constitution. In addition, since 18 U.S.C. § 922(n) is unconstitutional, any false statements made during the purchase of any firearm alleged pursuant to 18 U.S.C. § 924(a)(1)(A) were immaterial, and as a result, Counts 2 and 3 of the Indictment must also be dismissed.

1

This motion is made pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Eastern District of California Local Rule 430.1, the Second Amendment to the United States Constitution, the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and such other statutory and constitutional rules as may be applicable.

This motion is based upon the instant motion and notice of motion, the accompanying memorandum of points and authorities, the files and records in the above-entitled case, and any and all other information that may be brought to the Court's attention before or during the hearing on this motion.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: November 2, 2022

*/s/ Reed Grantham*
REED GRANTHAM
Assistant Federal Defender
Attorney for Defendant
BRYAN BARTUCCI

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PROCEDURAL HISTORY

On December 18, 2018, a felony Information was filed in the related case of 1:18-cr-00270-ADA-BAM. *See* Dkt. #1. This Information charged Mr. Bartucci with one count of engaging in the business of dealing firearms without a license between August 4, 2016, and November 29, 2016, in violation of 18 U.S.C. § 922(a)(1)(A). *See* Dkt. #1. On January 24, 2019, the parties entered into a deferred prosecution agreement in that matter, whereby, if Mr. Bartucci satisfied his obligations under the agreement for a period of 18 months, the government would move to dismiss the Information in that case. *See* Dkt. #8 at 3; Dkt. #8-1 at 1-3.

Approximately nine months later, on October 24, 2019, the government filed the Complaint in the instant matter, alleging that Mr. Bartucci had unlawfully received two firearms, and attempted to purchase a third, while under felony information in case 1:18-cr-00270-ADA-BAM, and that he had made false statements about whether he was under felony information during these firearm purchases. *See* Dkt. #11. Specifically, the Complaint alleged that Mr. Bartucci purchased two firearms—"a Smith & Wesson, model 5906, 9mm caliber pistol bearing the serial number VYZ1340" and "a Savage, model 730 12 gauge shotgun, bearing the serial number 80955"—and that he picked up these firearms on July 6, 2019. Dkt. #1 at 4. The Complaint further alleged that Mr. Bartucci, in purchasing these firearms, filled out ATF Form 4473 and marked "no" on the form when asked whether he was under indictment or information in any court for a felony. Dkt. #1 at 4. Thereafter, according the Complaint, on September 18, 2019, Mr. Bartucci purchased another firearm—a "CZ, model CZ75 Compact, 9mm caliber pistol, bearing the serial number CS65806"—and in doing so made the same representation on the ATF Form 4473 as in the earlier transaction. Dkt. #1 at 4. This firearm was not received by Mr. Bartucci. *See* Dkt. #1 at 3.

On November 14, 2019, an Indictment issued in this case, formally charging Mr. Bartucci with one count of illegal receipt of a firearm by a person charged by felony information on July 6, 2019, in violation of 18 U.S.C. § 922(n), and with two counts of making a false statement during the purchase of a firearm on June 5, 2019, and on September 18, 2019, in violation of 18

U.S.C. § 924(a)(1)(A). *See* Dkt. #11 at 1-3.

## II.    ARGUMENT

### A.    The Supreme Court's Decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* Fundamentally Changed the Framework for Analyzing Second Amendment Challenges.

The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), the Supreme Court held that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense, particularly in the home, is central to the right. *See also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010). Following *Heller* and *McDonald*, the Ninth Circuit, like other Circuit Courts of Appeals, "adopted a two-step inquiry for assessing whether a law violates the Second Amendment." *Mai v. United States*, 952 F.3d 1106, 1113 (9th Cir. 2020); *see also Jackson v. City and County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014); *McDougall v. Cnty. of Ventura*, 23 F.4th 1095, 1105 (9th Cir. 2022). "This test (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Mai*, 952 F.3d at 1113 (citation and internal quotation marks omitted).

On June 23, 2022, however, the Supreme Court announced a new framework for analyzing Second Amendment claims, and abrogated the two-step inquiry adopted by the Ninth and other Circuit Courts of Appeals following *Heller* and *McDonald*. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In *Bruen*, the Supreme Court rejected the second step of the previous framework and reasoned that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127. Under the Court's new framework "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2129-30. The government then "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only

if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'" *Id.* at 2126.

Applying *Bruen* in this case, 18 U.S.C. § 922(n) is unconstitutional because the plain text of the Second Amendment clearly protects an individual's right to receive a firearm and 18 U.S.C. § 922(n)'s prohibition against an individual under felony indictment or information from receiving a firearm is not consistent with the country's historical tradition of firearm regulations. Accordingly, because the government cannot meet its burden to justify its regulation by demonstrating that it is consistent with the country's historical tradition of firearm regulation, the Court should find that 18 U.S.C. § 922(n) violates the Second Amendment and dismiss Count 1 of the Indictment.

**B.     The Second Amendment's Plain Text Covers Mr. Bartucci's Conduct.**

Under *Bruen*'s new framework, courts must first determine whether the Second Amendment's plain text covers the conduct at issue. *See Bruen*, 142 S. Ct. at 2129-30. If so, "the Constitution presumptively protects that conduct." *Id.* at 2130.

It cannot be disputed here that Mr. Bartucci is "part of 'the people' whom the Second Amendment protects." *Id.* at 2134; *see also Heller*, 554 U.S. at 580 (noting the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans"). Having never suffered a prior felony conviction, Mr. Bartucci, for purposes of the Second Amendment, is "an ordinary, law-abiding, adult citizen" that the Second Amendment was intended to cover. *Bruen*, 142 S. Ct. at 2134. Indeed, even in the pre-*Bruen* cases that upheld the constitutionality of 18 U.S.C. § 922(n), courts consistently found that "a defendant under indictment is a 'law abiding citizen' who remains eligible for Second Amendment protection." *United States v. Laurent*, 861 F. Supp. 2d 71, 102 (E.D.N.Y. 2011); *see also United States v. Love*, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood.").

Likewise, the conduct at issue here, the receipt of two firearms, is plainly covered by the

Second Amendment, which "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. Specifically, the Supreme Court has explained that the Second Amendment protects "the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Bruen*, 142 S.Ct. at 2143 (quoting *Heller*, 554 U.S. at 627). In this case, the two firearms that Mr. Bartucci is alleged to have received—a 9mm pistol and a 12-gauge shotgun (*see* Dkt. #11 at 1)—are both "weapons 'in common use' today for self-defense." *Id.* at 2134 (quoting *Heller*, 554 U.S. at 627). Indeed, the Supreme Court has referred to the handgun as "the quintessential self-defense weapon," *Heller*, 554 U.S. at 630, and has likewise drawn a distinction with respect to shotguns, which are "in common use" today as a self-defense weapon and covered by the Second Amendment, and other "dangerous and unusual weapons," including "short-barreled shotguns," which are not covered by the Second Amendment. *Heller*, 554 U.S. at 625.

Because the Second Amendment's plain text covers the conduct at issue here—the receipt of several firearms by an otherwise "ordinary, law-abiding, adult citizen"—the Constitution presumptively protects the conduct, and the government must demonstrate that the regulation in question—18 U.S.C. § 922(n), prohibiting a person under felony indictment or information from receiving firearms—is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, 142 S.Ct. at 2126, 2134.

C.  **The Government Cannot Meet Its Burden to Prove That 18 U.S.C. § 922(n)'s Restriction on the Receipt of Firearms for those Under Felony Indictment or Information is "Consistent with the Nation's Historical Tradition of Firearm Regulation."**

Title 18 U.S.C. § 922(n), as relevant here, makes it "unlawful for any person who is under indictment[1] for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The text of 18 U.S.C. § 922(n) is nearly unlimited in its reach, in that it is not

---

[1] Title 18 U.S.C. § 921(a)(14) further defines "[t]he term 'indictment'" to "include an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted."

limited by the type of the firearm received or the purpose for which the firearm might be used, nor is it limited to firearms possessed in a particular public area, as it applies with equal force to firearms kept in the home for self-defense. As a result, 18 U.S.C. § 922(n) makes it broadly unlawful for any individual under felony indictment or information to receive or possess any firearm for any purpose, and provides for a punishment of a fine and/or imprisonment of "not more than five years." *See* 18 U.S.C. § 922(n); 18 U.S.C. § 924(a)(1)(D).

Under the new *Bruen* framework, because the plain text of the Second Amendment protects the conduct prohibited by 18 U.S.C. § 922(n), the government bears the burden to show that the prohibition—restricting firearm receipt for those under felony indictment or information—is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130. To meet this burden, the government is required to offer relevant and specific historical examples to show a tradition of prohibiting the receipt of firearms for those under felony indictment or information. *See id.* at 2138-2156. However, the Supreme Court has explained that "when it comes to interpreting the Constitution, not all history is created equal" and since "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," the best evidence to understand the scope of the Second Amendment is to determine the meaning it had at the time it was adopted. *Id.* at 2136 (citing *Heller*, 554 U.S. at 634-35). Accordingly, the government may no longer "simply posit that the regulation promotes an important interest" and thereby rely on general public safety justifications to uphold a firearm regulation. *Id.* at 2126. Rather, after *Bruen*, "the government *must affirmatively prove*[2] that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127 (emphasis added).

With respect to 18 U.S.C. § 922(n), because there is no longstanding historical tradition of depriving those who have been merely accused of a crime of their right to bear arms, the government cannot meet its burden to show that the Nation's history—particularly in the 18th and 19th centuries—supports firearm restrictions on those under felony indictment. Indeed,

---

[2] In *Bruen*, the Supreme Court emphasized that it is the government's burden to provide the historical justification necessary to uphold any regulation covered by the Second Amendment, and that courts should not be "obliged to sift the historical materials for evidence." *Bruen*, 142 S.Ct. at 2150; *see also id.* at 2130 n.6 ("Courts are thus entitled to decide a case based on the historical record compiled by the parties.").

Bartucci – Motion to Dismiss Indictment      7

Congress first passed a law prohibiting transporting firearms for those under indictment for a crime of violence in 1938. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed). It was not until 1961 that Congress expanded the prohibition to include all individuals under indictment. *See* Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed). The statute was again clarified in 1968, to include indictments in state and federal court, but only those felonies punishable by more than one year in prison. *See* Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 et seq.). In 1986, Congress combined all prohibitions against persons under felony indictment into what is now 18 U.S.C. § 922(n)'s current form.

As evidenced above, not only did restrictions on those under felony indictment from receiving firearms not appear until the middle of the twentieth century, such twentieth-century historical evidence provides no information as to whether such conduct—receiving firearms by persons under felony indictment or information—"f[e]ll outside the Second Amendment's 'unqualified command'" at either the time of the adoption of the Second Amendment, or at the time of the later passage of the Fourteenth Amendment. *Bruen*, 142 S.Ct. at 2126. In fact, in *Bruen*, the Supreme Court specifically declined to consider *any* of the twentieth century evidence offered by the respondents, noting it "does not provide insight into the meaning of the Second Amendment." *Id.* at 2154 n. 28 ("We will not address any of the 20th-century historical evidence . . . . As with their late-19th-century evidence, the 20th-century evidence . . . does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence.").

Accordingly, the government is simply unable to meet its burden to justify the prohibition set forth in 18 U.S.C. § 922(n) because there is no longstanding historical tradition of depriving those who have been merely accused of a crime of their right to bear arms. This Court should, therefore, find that 18 U.S.C. § 922(n) violates the Second Amendment and dismiss Count 1 of the Indictment in this case.

Such a ruling would comport with the recent holding from the Western District of Texas, where the district court in *United States v. Quiroz*, when confronted with the same issue now before this Court, found 18 U.S.C. § 922(n) unconstitutional after conducting an extensive

historical survey and concluding that "the historical record lack[s] the clear evidence needed to justify this regulation" and "little evidence" to show that prohibiting those under felony indictment or information from receiving firearms "aligns with this Nation's historical tradition." 2022 WL 4352482 at*10, *13 (W.D. Tex. Sept. 19, 2022). In fact, the district court in *Quiroz* went so far as to state that the court was "skeptical that the government here, or in any other court, could defend [18 U.S.C.] § 922(n)'s constitutionality" post-*Bruen*. *Id.* at *10.

In *Quiroz*, as in this case, the defendant sought dismissal of the indictment post-*Bruen* on the grounds that 18 U.S.C. § 922(n) is unconstitutional because prohibiting a person under felony indictment or information from receiving a firearm is not consistent with the country's historical tradition of firearm regulations. *See id.* at *1. In reaching its conclusion, and finding 18 U.S.C. § 922(n) unconstitutional, the district court noted that "*Bruen*'s new framework" made "the constitutional standard 'more explicit'" and eliminated "asking judges to 'make difficult empirical judgments' about 'the costs and benefits of firearms restrictions.'" *Id.* at *12 (quoting *Bruen*, 142 S.Ct. at 2130, 2134). Instead, as the court noted, courts can "no longer . . . balance away a constitutional right" but must rely on the government to affirmatively "prove that laws regulating conduct covered by the Second Amendment's plain text align with this Nation's historical tradition." *Id.* at *12-13.

Notably, in *Quiroz*, the district court rejected the government's efforts to "analogize regulations prohibiting felons from possessing firearms with those prohibiting receipt of a firearm by persons under indictment"[3] and found that the government failed to provide any "historical analysis from the Second Amendment's ratification, much less anything pre-1938" that would prove that prohibiting persons under indictment or information from receiving a firearm is consistent with the Nation's historical tradition of firearm regulation. *Id.* at *5. Significantly, even after the district court concluded that the government failed to carry its burden—as is specifically required by *Bruen*—the court nonetheless undertook "its own historical inquiry in the government's absence," yet it too failed to find any "historical

---

[3] In considering this argument, the court noted that "[s]haring a history with felon-in-possession laws makes [18 U.S.C.] § 922(n) constitutional in the same way a dog is a cat because both have four legs." *Quiroz*, 2022 WL 4352482 at *5.

Bartucci – Motion to Dismiss Indictment                                    9

justification for disarming those indicted, but not yet convicted, of any crime." *Id.* at *5, *7.

As part of its historical survey, the court traced the historical record "to determine the public understanding of [the Second Amendment] in the period after its enactment and ratification," an inquiry that the Supreme Court has characterized as "a critical tool of constitutional interpretation," but found that "the historical record lack[ed] the clear evidence needed to justify" a regulation, like that set forth in 18 U.S.C. § 922(n), that would exclude those under indictment or information from being able to receive or possess firearms. *Heller*, 554 U.S. at 605; *Quiroz*, 2022 WL 4352482 at *10. Ultimately, the district court in *Quiroz* concluded not only that the government failed to meet its burden under *Bruen*, but also that the court's own "historical survey" likewise "f[ound] little evidence that [18 U.S.C.] § 922(n) . . . aligns with this Nation's historical tradition," and, as a result, held 18 U.S.C. § 922(n) unconstitutional and dismissed the indictment. *Quiroz*, 2022 WL 4352482 at *13.

The present case is indistinguishable from *Quiroz*. Post-*Bruen*, it is now the government's burden to affirmatively prove that certain laws, including the law at issue here, which prohibits persons under felony indictment or information from receiving firearms, are consistent with this Nation's historical tradition of firearm regulation. Given the historical record, the government is unable to meet its burden to justify the prohibition set forth in 18 U.S.C. § 922(n) because there is no longstanding historical tradition of depriving those who have been merely accused of a crime of their right to bear arms. Accordingly, 18 U.S.C. § 922(n) is unconstitutional and Count 1 of the Indictment must be dismissed.

In addition, because 18 U.S.C. § 922(n) is unconstitutional, with respect to Counts 2 and 3 of the Indictment, the government is unable to meet its burden to establish that the alleged false statements made by Mr. Bartucci during the purchase of the firearms in question—that Mr. Bartucci was not under felony indictment or information—were in any way "material" to the sale of the firearms. *See* Dkt. #11 at 2-3. Indeed, in order to establish the necessary elements of the offense charged in Counts 2 and 3 of the Indictment under 18 U.S.C. § 924(a)(1)(A), the government would be required to establish that any alleged false statements made during the purchase of the firearms in question were "material" in that they "had a natural tendency to

influence or was capable of influencing [a seller] into believing that the [firearm] could be lawfully sold to the defendant." Model Crim. Jury Instr. 9th Cir. 14.8 (2022). Because 18 U.S.C. § 922(n) is unconstitutional, and Mr. Bartucci's conduct—receiving lawfully purchased firearms—is covered by the Second Amendment, any alleged false statement with respect to whether he was under felony indictment or information cannot be "material," and, as a result, Counts 2 and 3 of the Indictment must also be dismissed. *See Quiroz*, 2022 WL 4352482 at *1 (dismissing the entire indictment against the defendant and noting that since "[d]efendant's motion hinges on the constitutionality of [18 U.S.C.] § 922(n) . . . if [it] is unconstitutional, then [d]efendant's false statement during the purchase of the firearm is immaterial").

### III. CONCLUSION

The Supreme Court's holding in *Bruen* fundamentally "changed the legal landscape" with respect to Second Amendment challenges. *Quiroz*, 2022 WL 4352482 at *13. As the district court in *Quiroz* recognized, "[t]he Second Amendment is not a 'second class right'" and courts can no longer "balance away" this constitutional right. *Id.* (quoting *McDonald*, 561 U.S. at 780). Rather, the burden now falls to the government to affirmatively prove that the particular regulation being challenged is actually "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. In this case, as is evident from the historical record and the extensive historical survey conducted by the district court in *Quiroz*, the government is unable to meet its burden of proving that depriving those who have been merely accused of a crime of their right to bear arms, aligns with this country's historical tradition of firearm regulation. Accordingly, and for the reasons set forth above, Mr. Bartucci respectfully requests that the Court dismiss the Indictment in this case.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: November 2, 2022

*/s/ Reed Grantham*
REED GRANTHAM
Assistant Federal Defender
Attorney for Defendant
BRYAN BARTUCCI